# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Anthony Falbo, | Case No. 3:16-cv-00351 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SunTrust Bank, | |
| Defendant. | JURY TRIAL DEMANDED |

## INTRODUCTION

1.  Plaintiff Anthony Falbo is bringing this action against Defendant SunTrust Bank because Defendant has harassed Plaintiff for months with collection robocalls, despite the fact that Plaintiff asked Defendant to stop calling him on numerous occasions.

2.  Defendant persistently utilized a system to automatically dial Plaintiff's cellular telephone, and left multiple messages with an artificial and prerecorded voice on Plaintiff's cell phone, which violated Plaintiff's privacy rights afforded under state and federal law.

3.  The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago,* 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the

tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471 (1980).

4.     Defendant has caused Plaintiff actual harm not only because he was subjected to the aggravation and invasions of privacy that necessarily accompanies these repeated robocalls, but also these robocalls caused diminished battery life and wasted voicemail capacity on his cellular telephone.

## JURISDICTION

5.     Jurisdiction of this Court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

6.     This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* and for its perpetual invasions of Plaintiff's privacy in violation of Wis. Stat. § 995.50.

7.     Venue is proper in this District because Defendant transacts business here and places phone calls into this District, and Plaintiff lives in Wisconsin and received some of Defendant's phone calls in this District.

## PARTIES

8.     Plaintiff Anthony Falbo (hereinafter "Plaintiff") is a natural person who resides in Wisconsin in the City of Greenville, County of Outagamie.

9.    Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

10.    Plaintiff received multiple collection communications from and on behalf of Defendant while in Wisconsin on his cellular telephone that is the subject of this litigation.

11.    Plaintiff regularly and systematically travels throughout Wisconsin and within this District many times a year to visit family and friends, to attend social events, and to conduct other business and commerce within this District.

12.    Plaintiff regularly and systematically travels throughout Wisconsin and within this District carrying and in possession of the cellular telephone that Defendant repeatedly called.

13.    Defendant SunTrust Bank (hereinafter "Defendant") is a foreign corporation with a principal place of business located at 303 Peachtree Street NE, Atlanta, Georgia 30308.

14.    Defendant is the largest subsidiary of SunTrust Banks, Inc., and offers a line of financial services to consumers and businesses throughout the county, including commercial, residential and consumer loans, deposit, credit, mortgage banking, as well as trust and investment services.

15.    Defendant is also the parent company of SunTrust Mortgage, Inc. and a

sister company of SunTrust Equipment Finance & Leasing Corp., both of which are licensed with the Wisconsin Department of Financial Institutions to conduct business in Wisconsin and which have registered agents of process authorized to accept service within the State of Wisconsin through Corporation Service Company located at 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

## FACTUAL ALLEGATIONS

16.   In 2015, Defendant contracted with Plaintiff and Bergstom Automotive in the state of Wisconsin to provide loans to Plaintiff for the purchase of five vehicles at Bergstrom Automotive in Wisconsin.

17.   After these loans went through and Plaintiff purchased the vehicles, Plaintiff's business partner contractually-agreed with Plaintiff to take on the responsibility to pay back these loans.

18.   Plaintiff's business partner failed to pay back these loans when they came due, however, and Defendant started coming after Plaintiff with collection calls and collection letters demanding payment on these loans.

19.   During several of these collection calls, Plaintiff explained to Defendant that his now-former business partner was responsible to pay back these loans.

20.   Plaintiff also told Defendant during these calls that they could go pickup and repossess the vehicles if his former business partner was not paying for

them, and he provided Defendant with the location of all the vehicles.

21.   Nevertheless, Defendant ignored Plaintiff's explanation and continued to bombard him with multiple collection calls to his cellular telephone every day.

22.   Plaintiff finally had enough and, on or around December 23, 2015, during a call with Defendant, Plaintiff pleaded for Defendant to stop calling his cellular telephone.

23.   Despite Plaintiff's request that Defendant stop these calls, Defendant continued to call Plaintiff repeatedly on his cellular telephone.

24.   Defendant eventually repossessed the vehicles that were the collateral on these loans, and sold those vehicles.

25.   However, Defendant continues to utilize its automatic telephone dialing system to call Plaintiff on his cellular telephone in an effort to collect on the deficiency balance of these loans.

26.   Plaintiff has continued to ask Defendant to stop calling him on his cell phone, but to no avail.

*Telephone Consumer Protection Act*

27.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

28.   According to findings by the Federal Communication Commission ("FCC"),

the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

29.   The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

30.   On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

31.   The FCC also resolved the question of whether consent may be revoked in a Declaratory Ruling and Order released on July 10, 2015, wherein it determined that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15–72, 30 F.C.C.R. 7961 (July 10, 2015).

32.   The TCPA prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any

automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A).

33.   An "automatic telephone dialing system" means "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A), (B).

34.   At all times relevant to this complaint, Plaintiff was and is a "person" as defined by 47 U.S.C. § 153(39).

35.   At all times relevant to this complaint, Plaintiff was and is the owner, subscriber and user of the telephone number 262-497-5778, which, at all times relevant to this complaint, has been assigned to a cellular telephone service.

36.   At all times relevant to this complaint, Defendant used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA at 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

### Illegal Auto-Dialed Collection Calls

37.   Within four years immediately preceding the filing of this lawsuit, Defendant and its agents used an automatic telephone dialing system to call Plaintiff's cellular telephone number in an effort to collect on a debt.

38.   Defendant's calls originated from various telephone numbers including, but

not limited to, 800-828-7959 and 800-211-9625.

39.   Plaintiff did not expressly consent to Defendant's placement of telephone calls to his cellular telephone by the use of an automatic telephone dialing system or a prerecorded or artificial voice prior to Defendant's placement of these calls.

40.   Moreover, Plaintiff continually revoked any consent he may have previously given to Defendant to call his cellular telephone by repeatedly asking Defendant to stop calling him on his cell phone.

41.   During a call with Defendant on or around December 23, 2015, Plaintiff asked Defendant to stop calling him, thereby revoking any consent that Defendant would have otherwise had to use an automatic telephone dialing system to call his cell phone.

42.   Defendant continued to automatically dial Plaintiff on his cell phone after December 23, 2015, however.

43.   Again, during a lengthy call with Defendant on or around January 7, 2016, Plaintiff asked that Defendant stop calling his cell phone.

44.   However, Defendant continued to use its automatic telephone dialing system to call Plaintiff on his cellular telephone after January 7, 2016.

45.   On or around January 20, 2016, Plaintiff's wife started an online chat with Defendant through Defendant's website and asked that Defendant stop

calling Plaintiff on his cellular telephone.

46.   Despite Plaintiff's efforts to get these repeated calls to stop, the online chat request did not work, and the calls from Defendant continued to be made to Plaintiff's cell phone after January 20, 2016.

47.   Yet again, on or around March 24, 2016, Plaintiff answered a call from Defendant and told Defendant that he would like his number removed from all of Defendant's call lists.

48.   Defendant continued to ignore Plaintiff's revocation requests, however, and continued to call Plaintiff's cellular telephone number with its automatic telephone dialing system after March 24, 2016.

49.   Finally, during several calls Defendant made to Plaintiff's cell phone in May 2016, Plaintiff's wife would answer and say something to the effect of, "please stop, we've asked you to stop calling."

50.   Nevertheless, Defendant persistently called Plaintiff's cellular telephone after these requests to stop calling, and they continue to call Plaintiff's cell phone to this day, multiple times every day.

51.   Upon answering many of Defendant's calls, Plaintiff would be greeted by an automated, machine-operated voice message that would ask Plaintiff to wait while they attempted to connect him with a live operator, which is indicative of an automatic telephone dialing system.

52. Upon answering other calls from Defendant, Plaintiff would say "hello" and then there would be a noticeable period of dead air and no live person on the other end of the call, which is also indicative of an automatic telephone dialing system.

53. During at least one of the calls Plaintiff had with Defendant, Defendant's representative explained to Plaintiff that they could not make calls at specific times because the system they use to make calls just puts his phone number back in line for the next call, or words to that effect.

54. During another call, after Plaintiff asked for his number to be removed from Defendant's system, Defendant's representative responded that they could not remove it because it was dialed by a computer and his number does not show up on her screen, or words to that effect.

55. Many of Defendant's calls that Plaintiff did not answer also led to artificial and prerecorded messages on Plaintiff's voicemail.

56. Moreover, Defendant would call Plaintiff's cellular telephone multiple times in a day and throughout the day, which is further indicative of Defendant's use of an automatic telephone dialing system to make these phone calls to Plaintiff.

57. Defendant knew, or should have known that they did not have consent to use an automatic telephone dialing system to call Plaintiff' cellular telephone

after Plaintiff's multiple requests for Defendant to stop calling him, yet they continued to harass Plaintiff with robocalls on a daily basis.

58.  Defendant's repeated autodialed collection calls to Plaintiff's cellular telephone, within the last four years prior to filing this complaint, were illegal and in violation of the TCPA, 47 U.S.C. § 227 *et seq.*

59.  None of the telephone calls that Defendant placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

60.  Defendant willfully or knowingly violated the TCPA by continuing to call Plaintiff's cell phone after December 23, 2015, and each time Plaintiff and his wife specifically asked Defendant to stop calling, because Defendant had no basis to believe that they had Plaintiff's prior express consent to make automated calls or to send artificial and prerecorded messages to his cell phone.

61.  Defendant also hired at least two third party collection agencies, First Financial Asset Management, Inc. and Associated Credit Services, Inc., to collect on these loans from Plaintiff.

62.  While collecting on these loans for Defendant, First Financial Asset Management, Inc. and Associated Credit Services, Inc. also called Plaintiff's cellular telephone without his prior express consent.

63.  The acts of First Financial Asset Management, Inc. and Associated Credit

Services, Inc. relating to the Plaintiff were conducted on behalf of Defendant and with the consent, approval, and/or ratification of Defendant.

64.    The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted, bold emphasis added.)

65.    The Seventh Circuit has ruled that, due to the Hobbs Act, the FCC Order cannot be challenged in the District Courts. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. Ill. 2010). This Court has ruled that because of the Seventh Circuit's ruling in *CE Design,* it "borders on frivolous" to attempt to challenge this FCC Order in a District Court. *Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 928-929 (W.D. Wis. 2013)(vacated after settlement).

66.    Accordingly, Defendant is liable for the autodialed collection calls of First

Financial Asset Management, Inc., Associated Credit Services, Inc. and any other third party collector that attempted to collect on these loans for Defendant by using an automatic telephone dialing system to call Plaintiff's cellular telephone in violation of the TCPA.

67. The repeated autodialed collection calls of Defendant and its agents to Plaintiff's cellular telephone also unreasonably invaded Plaintiff's right to privacy in his home, in violation of Wis. Stat. § 995.50.

68. It was highly offensive for Defendant to continue calling Plaintiff on his cell phone, multiple times a day, after he and his wife had repeatedly asked them to stop.

*Summary*

69. All of the calls made to Plaintiff's cellular telephone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

70. Defendant's persistent autodialed calls eliminated Plaintiff's right to be left alone.

71. Defendant's autodialed collection calls disrupted Plaintiff's sleep, disrupted Plaintiff during business meetings, disrupted Plaintiff at dinner, and continually frustrated and annoyed Plaintiff.

72.   These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in his home, at work, and anywhere else he went with his cell phone.

73.   By persistently autodialing Plaintiff's cellular telephone without his prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

### *Respondeat Superior Liability*

74.   The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as more further described herein, including First Financial Asset Management, Inc. and Associated Credit Services, Inc., were committed within the time and space limits of their agency relationship with their principal, Defendant.

75.   The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting debts.

76.   By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

77.     Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, First Financial Asset Management, Inc., and Associated Credit Services, Inc., including but not limited to violations of the TCPA in its attempts to collect these debts from Plaintiff.

### TRIAL BY JURY

78.     Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

### CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. § 227 *et seq.*

79.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80.     Within the four year period immediately preceding this action, Defendant made numerous calls to Plaintiff's cellular telephone using an automatic telephone dialing system in violation of the TCPA, 47 U.S.C.    § 227(b)(1)(A)(iii) and 47 C.F.R. 64.1200 (a)(1)(iii).

81.     The acts and/or omissions of Defendant at all times material and relevant

hereto, as described in this complaint, were done unfairly, unlawfully, intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

82. As a causally direct and legally proximate result of the above violations of the TCPA, Defendant, at all times material and relevant hereto and as described in this Complaint, caused Plaintiff to sustain damages.

83. Defendant did not have the prior express consent of Plaintiff to use an automatic telephone dialing system to call his cellular telephone.

84. Defendant made these calls to Plaintiff's cell phone willfully and after Plaintiff explicitly asked them to stop on numerous occasions.

85. Under 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of $500.00 per phone call made to Plaintiff's cell phone.

86. Defendants willfully and knowingly violated the TCPA and, as such, Plaintiff is entitled to $1,500.00 per phone call made to Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

87. Plaintiff is also entitled to injunctive relief prohibiting Defendant from contacting Plaintiff on his cellular phone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(a).

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

## WIS. STAT. § 995.50

88.  Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

89.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

90.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

91.  The Honorable Court of Appeals for the 8th Circuit recently held that violations of the TCPA were violations of a consumer's right to privacy:

> We conclude that the ordinary meaning of the term "right of privacy" easily includes violations of the type of privacy interest protected by the TCPA. Our court has previously stated that violations of the TCPA are "'invasions of privacy' under [the] ordinary, lay meaning[] of the[] phrase[].

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012)

(citing *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401

F.3d 876, 881 (8th Cir. 2005)).

92.   Wisconsin has also recognized the right of privacy in Wis. Stat. § 995.50.

93.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns and affairs.

94.   Defendant and its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns of Plaintiff by repeatedly and unlawfully calling Plaintiff's cellular telephone, and by continuing to call Plaintiff after he repeatedly asked them to stop.

95.   The conduct of Defendant and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy, which occurred in a way that would be highly offensive to a reasonable person in that position.

96.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to equitable relief to prevent further invasions, compensatory damages, reasonable attorney's fees and punitive damages from Defendant in an

amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

### COUNT I.

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C.  § 227 *et seq.*

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B) against Defendant and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiff;

- for an injunction prohibiting Defendant from contacting the Plaintiff on his cellular telephone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(A);

### COUNT II.

### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

### WIS. STAT. § 995.50

- for an award of compensatory damages from Defendant pursuant to Wis. Stat. § 995.50(1)(b) in an amount to be determined at trial and for Plaintiff;

- for equitable relief to prevent and restrain such further invasions from

Defendant pursuant to Wis. Stat. § 995.50(1)(a);

- for an award of punitive damages from Defendant pursuant to Wis. Stat. § 895.043 for Defendant's intentional disregard for Plaintiff's right of privacy, and in an amount to be determined at trial for Plaintiff;

- for an award of reasonable attorney's fees pursuant to Wis. Stat. § 995.50(1)(c) against Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**BARRY & HELWIG, LLC**

Dated: May 25, 2016

By: s/ Patrick J. Helwig
Patrick J. Helwig, Esq.
WI Attorney I.D.#1081347
2701 University Ave. SE, Suite 209
Minneapolis, Minnesota 55414-3236
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
phelwig@lawpoint.com

**Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF WISCONSIN    )
                       ) ss
COUNTY OF OUTAGAMIE  )

Pursuant to 28 U.S.C. § 1746, Plaintiff Anthony Falbo, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___May___  ___25___ , ___2016___
               Month     Day    Year

___Signature___